IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESPINOLA TAYLOR, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:12-CV-2125-O (BF) |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying the claim of Espinola Taylor ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief and Defendant's Response Brief. The Court reviewed the record in connection with the pleadings. For the reasons that follow, the Court recommends that the final decision of the Commissioner be **AFFIRMED**.

**Background**[1]

On June 1, 2010, Plaintiff filed her application for DIB. (Tr. 96-104.) In her application, Plaintiff alleged a disability onset date of October 21, 2009, due to back problems, depression, and a third grade learning disability. (Tr. 98, 127.) The application was denied initially and again upon reconsideration. (Tr. 50-51.)

Plaintiff requested a hearing, which was held on August 9, 2011. (Tr. 28-49.) Plaintiff, represented by counsel, testified at the hearing, along with a vocational expert, Mr. Russell Bowden

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

("VE"). (Tr. 28.) Plaintiff was born on April 7, 1965, and she was forty-six years old at the time of the hearing. (Tr. 18.) Plaintiff has a limited education, she is able to communicate in English, and she had a license as a certified nurse's assistant, but the license has since expired. (Tr. 18, 33-34.) Plaintiff has past relevant work as a certified nurse's aide and a housekeeper. (Tr. 18.)

On September 13, 2011, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (Tr. 10-20.) In that decision, the ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[2] Before proceeding to step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2014. (Tr. 12.) At step one, the ALJ determined that Plaintiff had not engaged in substantial work activity since her October 21, 2009, alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff's lumbar disc disease, bipolar disorder, and obesity were severe impairments. (*Id.*) However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the requirements of any listed impairments for presumptive disability under the Social Security Regulations (the "Regulations"). (Tr. 13.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found that Plaintiff could perform a wide range of sedentary work, in that she could lift and carry 10 pounds, stand and walk at least 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. (Tr. 14.) The ALJ additionally determined that Plaintiff needed the option of alternating between sitting and standing at 30 minute intervals; she could never climb ropes, ladders, or scaffolds but she could do other postural activities occasionally; she should avoid unprotected

---

[2] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. § 416.920.

heights and extremes of cold; she could handle simple instructions only; she should have only occasional contact with others; and she should not have any strict production requirements. (*Id.*) At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work. (Tr. 18.) However, at step five, the ALJ found that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, such as a lens inspector and film inspector. (Tr. 19.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from October 21, 2009, her alleged onset date, through September 13, 2011, the date of the decision. (Tr. 19-20.)

Plaintiff requested review of the ALJ's decision from the Appeals Council, however, the request for review was denied on May 9, 2012. (Tr. 1-6.) Thus, the ALJ's decision became the final decision of the Commissioner from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

3

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must

be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

## Issue

**Whether the ALJ's determination that Plaintiff was not fully credible is supported by substantial evidence.**

## Analysis

Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff's testimony was not entirely credible. (Pl.'s Br. at 8-10.) When a claimant establishes the existence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of those symptoms to determine the extent to which they affect the individual's ability to do basic work activities. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). This requires the ALJ to make a finding concerning the credibility of the claimant's statements about the symptoms and their functional effects. *Id.* "The ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). However, the ALJ must articulate credible and plausible reasons for rejecting subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994).

At the hearing, Plaintiff testified that the pain in her lower back, left leg, and feet prevents her from being able to maintain competitive employment. (Tr. 34-36.) Plaintiff stated that she has

a constant sharp pain in her lower back and a burning sensation in her left leg and feet. (Tr. 35.) Plaintiff testified that the medication helps with her back pain but it makes her sleepy and unable to function the next day. (Tr. 35-36, 39.) Plaintiff stated that nothing helps with the burning pain in her leg and feet. (Tr. 36.) Plaintiff said that on a good day her pain is at a level 6 and she can clean her house, but on a bad day it is hard for her to get out of bed. (Tr. 38.) Plaintiff stated that she has about 3 bad days a week. (*Id.*) Plaintiff testified that she can stand or walk for about 30 minutes at a time. (Tr. 39-40.) Plaintiff said that she might be able to carry a gallon of milk without having back pain, but she is not sure. (Tr. 40-41.) Plaintiff testified that she has been treated for bipolar disorder and depression since 2007, but it is her back problems that prevent her from being able to work. (Tr. 41.) Plaintiff stated that she quit working in October of 2009, but she has been receiving unemployment benefits up until a month before the hearing. (Tr. 42.) The VE testified that a hypothetical person with all of the limitations alleged by Plaintiff would not be able to maintain competitive employment. (Tr. 47.)

      The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 17.) The ALJ cited several reasons to support this determination. First, the ALJ noted that Plaintiff has not required a lot of treatment since her fusion surgery. Plaintiff began experiencing back pain in 2009, and she has a history of L5-S1 spondylolisthesis. (Tr. 191-92.) After trying conservative measures such as therapy and injections to no avail, Plaintiff underwent a transforaminal lumbar body fusion operation on April 13, 2010. (Tr. 191, 251-53.) After the surgery, Plaintiff developed a burning pain with neuropathic type symptoms. (Tr. 261-64.) On April 26, 2010, an MRI of Plaintiff's lumbar spine showed the post-surgical changes with possible fibrosis at the lumbosacral junction. (Tr. 222.)

On May 27, 2010, a doctor at Parkland Health & Hospital System ("Parkland") noted that Plaintiff had been doing fairly well for the last month although she was still experiencing a burning type pain. (Tr. 272-73.) Plaintiff reported that she had been doing her physical therapy exercises and her motor function strength had increased. (Tr. 272.) An MRI showed an unchanged position of hardware and was otherwise negative. (*Id.*) In August of 2010, Plaintiff reported that her pain had lessened since her surgery but she was still experiencing some burning pain at night. (Tr. 372-76.) The doctor noted that Plaintiff's walking was limited to various distances before she experienced pain, she did not utilize an assistive device, and she rated her present pain as a 5 on a scale of 0-10 with 0 being no pain and 10 being most severe pain. (Tr. 372.) On August 10, 2010, Plaintiff reported that she was feeling better and her good days were gradually increasing. (Tr. 378-79.) Plaintiff told the doctor that she was back to exercising and she walks every other day. (Tr. 378.) The doctor noted that Plaintiff was making good progress and she had a normal energy level. (*Id.*)

On February 10, 2011, Plaintiff reported a lot of stiffness and pain across her lower back. (Tr. 465.) A physical examination revealed no loss of strength in her bilateral lower extremities, her sensation was intact, she had a negative straight leg raise bilaterally, and normal reflexes. (*Id.*) However, because of her reported pain, the doctor ordered an MRI. (*Id.*) The MRI performed on March 27, 2011, revealed disc degeneration at L5-S1 with grade 1 spondylolisthesis with a spinal fusion noted with screws in L5-S1 with rod placed. (Tr. 479.) The doctor referred Plaintiff to a pain management clinic due to the rest of the MRI looking well with no signs of disc protrusions above her fusion site, but some granulation tissue contacting her left S1 nerve root. (*Id.*)

On June 26, 2011, Plaintiff reported to Parkland for bilateral lower extremity pain. (Tr. 501.) Plaintiff complained of a burning, aching pain in her calves which radiated down to her feet,

7

particularly the soles of her feet. (*Id.*) Plaintiff stated that the pain was worse with activity, but she denied any numbness or weakness. (*Id.*) The doctor noted that an EMG in August of 2010, after Plaintiff's surgery, revealed normal results with no neuropathy. (*Id.*) Plaintiff described back pain as well, but said it felt more like stiffness and it was relieved with heat and rest. (*Id.*) The doctor diagnosed Plaintiff with chronic low back pain secondary to lumbar degenerative disc disease and postlaminectomy syndrome. (Tr. 498.) The doctor gave Plaintiff an epidural steroid injection. (*Id.*)

In her brief, Plaintiff contends that the ALJ incorrectly used her treatment records to discount her credibility because there was no indication in the records that Plaintiff rejected or refused any treatment. (Pl.'s Br. at 9.) However, the issue is not whether Plaintiff refused treatment, but whether Plaintiff's condition required frequent treatment. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (upholding the ALJ's credibility assessment where treatment records failed to show significant ongoing cardiac problems). Additionally, the ALJ noted that "no doctor has reported in the record that the claimant is disabled or even that she is more limited than I have found above." (Tr. 17.) Subjective complaints must be corroborated by objective medical evidence. *Chambliss*, 269 F.3d at 522. The ALJ correctly utilized Plaintiff's medical history in finding that Plaintiff's alleged symptoms of pain were not entirely credible.

The ALJ also found Plaintiff's statements not entirely credible because she was well developed and nourished at the hearing and she did not require an assistive device. (Tr. 17.) Plaintiff argues that there is no requirement that she appear famished at the hearing or that she utilize an assistive device to establish that she has serious back pain from a failed surgery. (Pl.'s Br. at 9.) While the Court agrees that there are no such requirements, the ALJ cited this as one factor, among many others, for discounting Plaintiff's credibility. An ALJ may appropriately consider a claimant's

demeanor at the hearing as one of several factors in evaluating the claimant's credibility. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Moreover, the Fifth Circuit has found that an external manifestation of debilitating pain is marked weight loss. *See Falco*, 27 F.3d at 163. The ALJ did not exclusively rely on Plaintiff's demeanor at the hearing to discount her credibility. Therefore, he could properly rely on her demeanor as one of several factors in his credibility evaluation.

   The ALJ additionally found Plaintiff not entirely credible because she had been receiving unemployment benefits, which require the individual to certify that she is able to work, for almost the entire relevant time period. (Tr. 17.) Plaintiff claims that her receipt of unemployment benefits does not mean that she was able to work, and cites to a case from the Tenth Circuit to support her position. (Pl.'s Br. at 10.) However, this Court is, of course, only bound by the precedent of higher Texas courts and the United States Supreme Court. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993). While the Fifth Circuit has yet to decide this precise issue, this Court finds that the ALJ properly relied on Plaintiff's receipt of unemployment benefits as *one factor* in discounting her credibility. *See Harvey v. Astrue*, No. 12-2267, 2013 WL 2244282, at *10 (E.D. La. May 21, 2013) (holding that the ALJ did not err by discounting the claimant's credibility because she received unemployment benefits after her alleged disability onset date); *Morris v. Astrue*, No. 12-0710, 2013 WL 596142, at *4 (W.D. La. Jan. 28, 2013), *rec. adopted*, 2013 WL 596304 (W.D. La. Feb. 15, 2013) (upholding the ALJ's credibility determination where ALJ considered, as one factor, that the claimant had received unemployment benefits showing she was ready, willing, and able to work); *see also Thibodeaux v. Astrue*, 324 Fed. Appx. 440, 445 (5th Cir. 2009) (finding that substantial evidence supported the ALJ's decision to disregard the opinion of the claimant's treating

psychiatrist where the severity of the opinion was inconsistent with, among other things, the claimant meeting the conditions for unemployment benefits).

The ALJ additionally found Plaintiff not entirely credible because treatment records reflected that Plaintiff's psychiatric symptoms were mild to moderate, and Plaintiff's comments to Metrocare personnel indicated that Plaintiff felt she could attempt to return to work. (Tr. 17.) Plaintiff has no objection to these reasons. An ALJ's evaluation of the credibility of a claimant's subjective complaints is entitled to judicial deference so long as it is supported by substantial evidence. *Villa*, 895 F.2d at 1024. The Court finds that substantial evidence supports the ALJ's credibility determination. The ALJ articulated several specific, plausible reasons for not finding the Plaintiff's statements regarding the severity of her symptoms entirely credible. This Court gives deference to the ALJ's credibility determination and finds his ultimate decision that Plaintiff is not disabled to be supported by substantial evidence. Remand is, therefore, not necessary.

### Recommendation

For the foregoing reasons, the Court recommends that the District Court **AFFIRM** the decision of the Commissioner, as it is supported by substantial evidence and the ALJ did not commit prejudicial legal error, and dismiss Plaintiff's Complaint with prejudice.

**SO RECOMMENDED**, September 4, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).